United States Bankruptcy Court
Eastern District of Michigan
Southern Division - Flint

In re:

| Debtor | Case No. |
|---|---|
| Rebecca A. Karhoff | Case No. 05-37673 |
| Barbara A. Fuller | Case No. 05-37683 |
| Richard A. Swarthout and Tina M. Swarthout | Case No. 05-37693 |
| Angela A. Castle | Case No. 05-37702 |
| Janeen S. Fleming | Case No. 05-37711 |
| Lelan C. Eckstein | Case No. 05-37892 |
| David G. Holbrook | Case No. 05-37895 |
| Krissy Burkhardt | Case No. 05-37898 |
| Jennie A. Decker | Case No. 05-37903 |
| Linda R. Serseroz | Case No. 05-37908 |
| Franklin J. Skinner | Case No. 05-37910 |
| Kristey A. Coffey | Case No. 05-37914 |
| Daniel J. A. Spencer | Case No. 05-37915 |
| Eric J. Robbins | Case No. 05-37916 |
| Lana S. Orrison | Case No. 05-37920 |
| Scott R. Kiger and Laurie J. Kiger | Case No. 05-37921 |
| Kevin W. Buckler | Case No. 05-37922 |
| Lori E. McNamara | Case No. 05-37923 |
| Thomas A. Papanek | Case No. 05-37925 |
| Phyllis A. Robbins | Case No. 05-37927 |
| Kelly J. Koch | Case No. 05-37932 |
| Tina M. Cantu | Case No. 05-37988 |
| Jeffrey P. Zwolensky | Case No. 05-37989 |
| Patricia Wisecup | Case No. 05-37990 |
| Lillie C. Chapman | Case No. 05-37992 |
| Chad M. Penrod | Case No. 05-37997 |
| Rodney C. Miller | Case No. 05-37999 |
| Kathy S. Krupa | Case No. 05-38002 |
| Jose C. Fuentes, Jr. and Tina M. Ciampaglia | Case No. 05-38004 |
| Debtor(s). | Chapter 7 |

Paul C. Ashmore and Ellen C. Ashmore      Case No. 05-37995
    Debtors.
_____/
     Chapter 13
     Hon. Walter Shapero

## OPINION REGARDING DISGORGEMENT OF FEES UNDER 11 U.S.C. § 329

Pending before the Court are Motion(s) for Disgorgement of Fees filed by the United States Trustee ("Trustee") in the above captioned cases, against former counsel for the Debtors, Paul Pianto ("Respondent").[1] The thirty (30) cases captioned above involve common fact patterns and common questions of law. After considering all the pleadings, statements made by the Debtors, the arguments of counsel for Respondent and the United States Trustee, the Court concludes, for the reasons set forth below, that Respondent shall disgorge all fees collected from the Debtors pursuant to 11 U.S.C. § 329(b) and Fed. R. Bankr. P. 2017.

I. PROCEDURAL HISTORY AND FACTUAL BACKGROUND

There were twenty-nine (29) Chapter 7 cases and one (1) Chapter 13 case filed by Respondent on behalf of the Debtors between October 15, 2005, and October 16, 2005.[2] Each of the cases have the following facts in common: Respondent agreed to represent the Debtors and in some instances executed a written fee agreement. Respondent appears as the attorney of record on each of the bankruptcy petitions. Prior to the filing of the bankruptcy cases, the Debtors paid Respondent the requisite filing fee,[3] and attorneys fees which ranged from $550.00 to $991.00 for the Chapter 7 cases; and $306.00 for the

---

[1]All parties represented by Respondent in the above-captioned cases will be referred to collectively as "the Debtors."

[2]The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 became effective on October 17, 2005.

[3]The fee collected by Respondent to file a Chapter 7 case was $209.00; and to file a Chapter 13 case was $194.00.

2

Chapter 13 case. Thereafter, Respondent failed to pay the filing fee to the Bankruptcy Court. In addition, Respondent did not appear at the Section 341 Meeting of Creditors and failed to notify the Debtors in advance of his intended absence.[4] In most instances, the Section 341 Meeting of Creditors had to be rescheduled in order to allow the Debtors to obtain counsel or to properly prepare themselves to appear in pro per. In twelve (12) of the thirty cases, there were significant delays in the filing of the bankruptcy cases.[5] Upon the Respondent's failure to pay the requisite filing fees, the Court ordered the Debtors to appear and show cause at a hearing scheduled for February 1, 2006, as to why their cases should not be dismissed. At the hearing conducted pursuant to the Court's Order To Show Cause, Respondent did not appear, but was represented by counsel.[6] Most of the Debtors appeared and made statements to the Court regarding the facts surrounding Respondent's actions, and the specific amounts paid by the Debtors to Respondent to cover the filing and attorney's fees. The Court was also informed of the status of an investigation that was commenced against Respondent with the Attorney Grievance Commission ("Commission"). According to statements made by the Trustee, the Commission was investigating Respondent's abandonment of his cases and had appointed a receiver to take possession of and protect Respondent's files. Pursuant to a full investigation the Commission would determine whether to file formal charges with the Attorney Discipline Board.

---

[4]Respondent only appeared at the 341 Meeting of Debtor, Angela A. Castle (Legal Case No. 05-37702).

[5]*See* Statement of Financial Affairs in Case Nos. 05–37673; 05-37683; 05-37711; 05-37895; 05-37898; 05-37908; 05-37914; 05-37921; 05-37922; 05-37925; 05-37927; 05-37932.

[6]The Court was informed by counsel for Respondent, Arnold Dunchock, that Respondent was in Arizona.

3

On February 8, 2006, the Court issued an order providing that the Debtors had until March 10, 2006, to either pay the balance due of the unpaid filing; or file an application to pay such fees in installments. If the filing fees were not paid, the case would be dismissed without further hearing. All fees were paid pursuant to the Court's Order of February 8, 2006.[7]

On March 31, 2006, the United States Trustee filed Motion(s) for an Order Requiring the Debtors' Attorney to Return Payment to Debtor(s) Pursuant to 11 U.S.C. § 329.[8] In the motions for disgorgement, Trustee argues that Respondent did not provide reasonable value to the Debtors worth the agreed compensation. Therefore, Trustee requests that the Court cancel the fee agreement and order Respondent to return any and all fees paid by the Debtors. Moreover, Trustee requests that the Court consider imposing additional sanctions against Respondent, based on: (1) Whether the Debtors had to seek the assistance of substitute counsel to appear at the Section 341 meeting or other related matters; (2) Whether the Debtors were required to appear at the show cause hearings; (3) Whether the Debtors' cases were delayed in filing; and (4) Any other factors the court deems relevant. A hearing on Trustee's motion(s) for disgorgement was held on May 31, 2006. At the hearing, Respondent did not appear, but was represented by counsel. Some

---

[7]In ten (10) cases, Respondent paid the filing fees (*See* Case Nos. 05-37711; 05-37892; 05-37910; 05-37914; 05-37915; 05-37922; 0537932; 05-37988; 05-37990; 05-37997). In all the other cases, the filing fees were paid by the Debtors.

[8]*See* Case Nos. (05-37673, Dkt. #16);( 05-37683, Dkt. #13); (05-37693, Dkt. #23); (05-37702, Dkt. 22); (05-37711, Dkt. #17); (05-37892, Dkt. #16); (05-37895, Dkt. #16); 05-37898, #14); (05-37903, Dkt. #12); (05-37908, Dkt. #10); (05-37910, Dkt. #37914); (05-37915, Dkt. #12); (05-37916, Dkt. #14); (05-37920, Dkt. #12); (05-37921, Dkt. #15); (05-37922, Dkt. #10); (05-37923, Dkt. #12); (05-37925, Dkt. #12); (05-37927, Dkt. #18); (05-37932, Dkt. #12); (05-37988, Dkt. #17); (05-37989, Dkt. #17); (05-37990, Dkt. #19); (05-37992, Dkt. #15); (05-37995, Dkt. #28); (05-37997, Dkt. #26); 05-37999, Dkt. 314); (05-38002, Dkt. #17).

4

of the Debtors also appeared and made additional statements.

II.  DISCUSSION

A.  Duties and Ethical Obligations of Attorneys in Bankruptcy Cases

Bankruptcy Courts, like all courts, have a crucial interest in protecting the integrity of the court and the judicial system of which it is a part. 1-8 Collier on Bankruptcy, ¶ 8.07 (15th ed. rev. 2006). The integrity of the system is at risk when attorneys who are an integral part of that system, fail to live up to their responsibilities. Thus, the statutory provisions of the Bankruptcy Code, related Federal Rules of Bankruptcy Procedure, and applicable state rules of professional conduct "impose strict ethical obligations upon the attorneys such that violations, in many instances, mandate sanctions." *Id.* In the instant case, it is undisputed that Respondent failed to comply with his professional and ethical obligations, including his duties of competence and diligence.[9]

B.  Disgorgement of Fees under 11 U.S.C. 329

Fed. R. Bankr. P. 2017 (a) authorizes the Court to determine whether the payment of an attorney fee, paid for services rendered in contemplation of the filing of a petition under the Code is excessive. That provision when coupled with 11 U.S.C. § 329(b) utilize the same tests in determining whether the Court should order the return of any sums paid. Properly included in the inquiry, among other things, are ethical violations *See In re Devers*, 12 B.R. 140 (D. D.C. 1981). 11 U.S.C. § 329(b) states in relevant part that "if such compensation exceeds the reasonable value of any such services . . . to the extent

---

[9] *See* Model Rules of Prof'l Conduct R. 1.1, which among other things prohibits a lawyer from neglecting a matter entrusted to that lawyer; under Model Rules of Prof'l Conduct R. 1.15, a lawyer has clear responsibilities with respect to funds entrusted to that lawyer by his client.

excessive, to . . . . the entity that made such payment." What constitutes reasonableness is a factual inquiry and a determination will depend on the circumstances of each case. 3 Collier on Bankruptcy, ¶ 329.04[1]. *See also* *In re Swartout*, 20 B.R. 102, 105 (Bankr. S.D. Ohio) (citing *In re Olen*, 15 B.R. 750, 752 (Bankr. E.D. Mich. 1981). To determine the reasonable value of services rendered, courts have examined factors including "the incompetence of counsel, whether any benefit was derived from the services, whether the attorney engaged in misconduct, whether the services rendered were compensable, and whether the attorney engaged in unethical conduct." 9 Collier on Bankruptcy, ¶ 2017.11 (15th ed. rev. 2006) (citations omitted).

In the case at bar, the Court finds that the Respondent failed to perform competently, i.e. fully complete, those legal services for which the Debtors contracted with him, and therefore , the fees paid clearly exceed the reasonable value of services provided. Specifically, the Debtors stated that they never met Respondent personally prior to the filing of their bankruptcy petitions, not even for an initial consultation. Most of the Debtors aver that they spoke to Respondent's secretary in order to complete the necessary forms for filing their bankruptcy cases. This Court believes, as the Court stated in *Dalton*, that "the practice of law involves more than completing forms and answering telephone calls . . . an attorney has an affirmative duty to meet with his or her clients, to counsel those clients regarding the legal significance of their actions and to answer any questions or concerns which the clients may raise." *In re Dalton*, 95 B.R. 857, 860 (Bankr. M.D. Ga. 1989), *aff'd*, 101 B.R. 820 (Bankr. M.D. Ga. 1989).

Furthermore, Respondent failed to appear at the Section 341 Meeting of Creditors with the Debtors, and in most instances did not give them advance notice of his intended

6

absence. Moreover, Respondent failed to pay the corresponding filing fee to the bankruptcy court. As a result, most of the Debtors had to pay the filing fees a second time, or risk having their bankruptcy cases dismissed.

Finally, the evidence, including a review of the documents filed by Respondent in each of the cases, revealed two things: First, in 12 cases Respondent significantly delayed filing petitions.[10] In the worst case, a delay of over two and one half years (*See* Dkt. #1, Statement of Financial Affairs, Legal Case No. 05-37711). Specifically, Debtor, Janeen S. Fleming, made her last payment to Respondent on May 16, 2003, and the case was not filed until October 15, 2005. In another case, Debtor, Krissy Burkhardt, made her last payment to Respondent on March 26, 2004, and the case was not filed until October 16, 2005 (*See* Dkt. #1, Statement of Financial Affairs, Legal Case No. 05-37898). Finally, in a third case, the Debtor, Linda R. Serseroz, made her last payment to Respondent on April 28, 2004, and the petition was not filed until October 16, 2005 (*See* Dkt. #1, Statement of Financial Affairs, Legal Case No. 05-37908). The remaining nine cases had delays of anywhere from four to eleven months. The Debtors also stated that they called Respondent's office to inquire about the delay in filing and in some instances were told that the Court was backed up; clearly not an honest answer. Thus, contrary to the interests of Respondent's former clients, he collected his fees and allowed the cases to sit idle.

Second, the 2016(b) statements filed in these cases and signed by Respondent stated that he "agreed to render legal services for all aspects of the bankruptcy case including . . .analysis of the debtor's financial situation and rendering advice to the debtor

---

[10]The 12 cases include: 05-37673; 05-37683; 05-37711; 05-37895; 05-37898; 05-37908; 05-37914; 05-37921; 05-37922; 05-37925; 05-37927; 05-37932.

7

in determining whether to file a petition in bankruptcy. . . representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearing." Statement of Attorney for Debtors Pursuant to Fed. R. Bankr. P. 2016(b), ¶ 4.  Therefore as a matter of pure contract, Respondent failed to completely fulfill his responsibilities.

In conclusion, a certain amount of services were rendered here, primarily the preparation and filing of the petitions, although apparently few, if any of the debtors, actually personally spoke to the Respondent, and the actual work was performed by a secretary or assistant in Respondents office.  Regardless, the pattern of the recited conduct in these many cases coupled with the essential indivisibility of Respondents undertaken (and ethically required) obligations require the conclusion that all sums paid by these debtors to Respondent should be returned.

C. Additional Sanctions

In addition to the foregoing, the Trustee has requested the Court order Respondent to pay $500.00 in additional sanctions; plus additional amounts if special circumstances existed.[11]  The additional amounts would compensate the Debtors for moneys paid to obtain new counsel to represent them at the Section 341 Meeting of Creditors and/or other bankruptcy court matters; for delays in the filing of the bankruptcy case; and generally, for Respondent's breach of his fiduciary duties.  In determining any amount of additional sanctions, this Court must "exercise restraint and discretion" and the order for sanctions "must be commensurate with the egregiousness of the conduct." *Mapother & Mapother v.*

---

[11] The court takes note of the fact that there were no motions filed by any of the Debtors after the hearing held on May 31, 2006, informing the Court of any special circumstances warranting sanctions above the amount requested by the Trustee..

*Cooper* (*In re Downs*), 103 F.3d 472 (6th Cir. 1996) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).

In response, counsel for Respondent requested that the Court consider the Respondent's dire financial situation and the fact that some of the Debtors had already received a discharge.[12] Moreover, counsel argued that the notion of returning attorneys fees to any Debtors who have not appeared or have not requested a return of fees paid, would be "unnecessary." Similarly, counsel argued that any additional sanctions above the amounts paid by the Debtors to Respondent, would amount to a "piling on," which Respondent may not be able to come out from under. Some of the Debtors appeared and gave additional statements at the hearing held on May 31, 2006.[13]

In the Courts view, at least in the first instance, before finally acting on that request the Court will await (1) the outcome of related matters pending before the Michigan State Attorney Grievance Commission; and (2) the outcome of any proceedings initiated by this Court before the Judges of the Eastern District of Michigan (if any such proceedings will be initiated), arising out of Respondents actions, following which the Court will make a final decision on the Trustee's request.

III.  CONCLUSIONS

---

[12]The Court finds this argument to be wholly without merit. As the Court held in *Rainwater*, "[a]ny relief received by the Debtors . . . was a result of the functioning of the bankruptcy system itself "rather than the efforts of Respondent." *Bill Parker & Assocs. V. Flatau* (*In re Rainwater*), 124 B.R.133, 137(Bankr. M.D. Ga. 1991).

[13]All the Debtors that gave statements generally agreed that Respondent should be ordered to return all the fees collected. In addition, there was one Debtor that described Respondent's conduct as "morally incorrect"; while another discussed having to proceed on her own without counsel; and finally, another Debtor stated that it was irrelevant that she had received a discharge.

9

For the reasons stated herein, the Court finds that the fees paid by the Debtors to the Respondent exceed the reasonable value of services provided, pursuant to 11 U.S.C. § 329 and Fed. R. Bankr. P. 2017. The Court orders that the any fee agreement executed by and between Respondent and the Debtors, be cancelled; that Respondent return any and all fees collected from the Debtors in connection with the filing of the above captioned cases, except for any filing fees subsequently paid by Respondent. This opinion shall be effectuated in accordance with the terms and conditions of an order that is being entered contemporaneously.

Dated:_____          _____
                                       WALTER SHAPERO
                                       United States Bankruptcy Judge

**Entered: September 29, 2006**

                                       _____/s/ Walter Shapero_____
                                       **Walter Shapero**
                                       **United States Bankruptcy Judge**